UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mr. MILO TYLER
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

OFFICER BRIAN RAO
POLICE COMMISSIONER RAYMOND KELLY
DISTRICT ATTORNEY CY VANCE
ASSISTANT DISTRICT ATTORNEY WHO
HANDLED MY CASE
NYC POLICE DEPARTMENT
OFFICER GREGORY ABBOTT
OFFICER KOPYSTIANSKYJ
AND ALL OTHER OFFICER"S INVOLVED IN
MY ARREST

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

AMENDED COMPLAINT
CIVIL DOCKET # 7:13-cv-05319-KM
ATTN: KENNETH M. KARAS

COMPLAINT
under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

Jury Trial:  ☐ Yes  ☐ No
(check one)

I.    **Parties in this complaint:**

A.    List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name  **MR. MILO TYLER**
             ID #  **825-13-00262**
             Current Institution  **A.M.K.C. Correctional Facility**
             Address **18-18 Hazen St.**
             **East Elmhurst, N.Y. 11370**

B.    List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1    Name **OFFICER BRIAN RAO**                Shield #_____
                   Where Currently Employed  **WAS EMPLOYED AT 6th PRECINCT**
                   Address  **233 West 10th Street**
                            **New York, N.Y. 10014**

Defendant No. 2    Name  OFFICER GREGORY ABBOTT          Shield #_____
                   Where Currently Employed  WAS EMPLOYED AT THE 6th PRECINCT
                   Address  233 West 10th Street
                            New York, N.Y. 10014

Defendant No. 3    Name  OFFICER KOPYSTIANSKYJ           Shield #_____
                   Where Currently Employed  WAS EMPLOYED AT 6th PRECINCT
                   Address  233 WEST 10th STREET
                            New York, N.Y. 10014

Defendant No. 4    Name  POLICE COMM. RAYMOND KELLY      Shield #_____
                   Where Currently Employed  1 POLICE PLAZA
                   Address  1 POLICE PLAZA (HEADQUARTERS)
                            New york, N.Y. 10007

Defendant No. 5    Name  DISTRICT ATTORNEY              Shield #_____
                   Where Currently Employed  DISTRICT ATTORNEY NEW YORK COUNTY
                   Address  1 HOGAN PLACE
                            New York, N.Y. 10013

## II.    Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the
caption of this complaint is involved in this action, along with the dates and locations of all relevant events.
You may wish to include further details such as the names of other persons involved in the events giving
rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    In   what   institution   did   the   events   giving   rise   to   your   claim(s)   occur?
      NEW YORK COUNTY SUPREME COURT

B.    Where  in  the  institution  did  the  events  giving  rise  to  your  claim(s)  occur?
      NEW YORK COUNTY SUPREME COURT

C.    What  date  and  approximate  time  did  the  events  giving  rise  to  your  claim(s)  occur?
      AUGUST 25, 2010  AT APPROX. 12:40 a.m.

D.    Facts: **THIS IS AN AMENDMENT TO MY ORIGINAL CLAIM.**

ON THE NIGHT OF AUGUST 25, 2010 OFFICER BRIAN RAO WHO

[What happened to you?]

WAS ON FOOT IN PLAIN CLOTHES, HEARD A RADIO TRANSMISSION
FROM OFFICER KOPYSTIANSKYJ RELAYING THE FACT OF A DONE DEAL
IN FRONT OF 72 CHRISTOPHER STREET. "DONE DEAL" WAS CODE
LANGUAGE MEANING THAT KOPYSTIANSKYJ HAD JUST OBSERVED A DRUG

[Who did what?]

TRANSACTION. THE RADIO REPORT CONTINUED WITH A BRIEF DESCRIPTION
OF THE TWO SUSPECTS (MILO TYLER FITTING NEITHER DESCRIPTION).
WHEN OFFICER RAO WAS APPROX. 30 FEET AWAY FROM 72 CHRISTOPHER
STREET HE SAW A PERSON, CHRISTIAN RONDAN, FITTING THE DESCRIPTION
OF THE SELLER. HE ALSO SAW ANOTHER MAN, MILO TYLER, WALK UP TO

[Was anyone else involved?]

RONDAN AND EITHER SHAKE ███ HANDS OR BUMP FISTS WITH HIM BEFORE
PROCEEDING WEST ON CHRISTOPHER STREET. RAO DID NOT SEE AN
EXCHANGE OF ANYTHING BETWEEN THE TWO. RAO THEN APPROACHED RONDAN,
IMMEDIATELY ARRESTED HIM AND RECOVERED 22 PIECES OF CRACK COCAINE
FROM HIS HAND. AFTER SECURING RONDAN, RAO IMMEDIATELY TRANSMITTED

[Who else saw what happened?]

A DESCRIPTION OF MILO TYLER TO THE OTHER OFFICERS ON THE TEAM.
HE THEN LEFT RONDAN WITH ANOTHER OFFICER AND JOGGED WEST ON
CHRISTOPHER STREET IN SEARCH OF MILO TYLER. OFFICER RAO CAUGHT
UP TO MILO TYLER ABOUT A BLOCK AWAY NEAR THE CORNER OF CHRISTOPHER
AND BLEEKER STREET, AND CONFRONTED HIM BY SAYING, "POLICE, DON'T
                                        (CONT. ON ATTACHMENT # 1 AT END OF CLAIM)

III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if
any, you required and received.  I SUFFERED EXTREME GRAVE HARDSHIP, AND LOSS OF
WAGES AND INSANITY FROM BEING INCARCERATED FOR SOME TIME BETWEEN
6 MONTHS WITHOUT MY FAMILY AND LOVED ONES. I LOST MY HOUSING AND
EVERYTHING DUE TO THIS INCARCERATION. I WAS CONSTANTLY IN FEAR OF
MY LIFE BY BEING INCARCERATED WITH RAPIST, MURDERERS, GANG MEMBERS,
ETC..., IN A FACILITY WHERE THE ALARM FOR VIOLENCE AND STABBINGS
OCCUR EVERYDAY AT ANY GIVEN TIME AND PLACE. I SUSTAINED PERMANENT
MENTAL AND EMOTIONAL STRESS WHICH I AM BEING TREATED FOR THROUGH
MENTAL AND THERAPY SESSIONS.

IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought
with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until such administrative remedies as are available are
exhausted." Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes _____    No **XX**

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

NOT APPLICABLE

B.     Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes _____   No **X**   Do Not Know _____

C.     Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes _____   No **X**   Do Not Know _____

If YES, which claim(s)? _____

D.     Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes _____   No **X**

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes **X**   No ☒

E.     If you did file a grievance, about the events described in this complaint, where did you file the grievance?
**WITH MY DEFENSE ATTORNEY AND ALL JUSTICES**

1.     Which claim(s) in this complaint did you grieve?  **FALSE ARREST, FALSE**

**IMPRISONMENT, AND MALICIOUS PROSECUTION**

2.     What was the result, if any?  **AFTER (6) SIX LONG MONTHS THE CASE**

**WAS DISMISSED ON FEBUARY 3rd, 2011, AND FULLY DISMISSED ON APRIL 28, 2011**

3.     What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process. _____

NOT APPLICABLE CASE DISMISSED

F.     If you did not file a grievance:

1.     If there are any reasons why you did not file a grievance, state them here: _____

SOUGHT THROUGH HON. JUSTICE LAWRENCE K.
MARKS & ORIGINAL JUSTICE AND MY DEFENSE
ATTORNEY **SEE** SEE EXHIBITS A, B, C, & D

2.     If you did not file a grievance but informed any officials of your claim, state who you informed,

when and how, and their response, if any: **VERBALLY THROUGH MY DEFENSE ATTORNEY, AND COURT APPEARANCES BEFORE THE INITIAL JUDGE AND ASSISTANT DISTRICT ATTORNEY UNTIL FINALLY DISMISSED BY HON. JUSTICE LAWRENCE K. MARKS AFTER SIX (6) MONTHS OF INCARCERATION UNDER FALSE ARREST AND CONSTITUTIONAL VIOLATIONS**

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. _____

**SOUGHT THROUGH THE JUDICIAL SYSTEM**

_____

_____

_____

_____

**Note:**   You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

**V.     Relief:**

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). **FOR THE PAIN AND SUFFERING FOR BEING INCARCERATED FOR SIX (6) CONSECUTIVE MONTHS, AND AWAY FROM MY FAMILY AND LOVED ONES. I WANT THE MANDATORY DAILY PAYMENT OF 750.00 DOLLARS FOR EACH DAY SPENT UNLAWFULLY BEHIND BARS. For PERMANENT EMOTIONAL STRESS AND MENTAL ANGUISH WHILE INCARCERATED I AM SEEKING THE AMOUNT OF THREE (3) MILLION DOLLARS. PUNITIVE DAMAGES IN THE AMOUNT OF THREE (3) MILLION DOLLARS TO PROTECT PLANTIFF AND OTHER CITIZENS OF THE UNITED STATES FROM BEING RACIALLY PROFILED AGAINST AND FALSELY ACCUSED AS WELL AS CONFINED IN THE FUTURE. TO DIRECT POLICE COMMISSIONER RAYMOND KELLY TO CONSTRUCT MORE PROFESSIONAL TRAINING OF OFFICERS TO PREVENT THIS HARDSHIP ON CITIZENS OF NEW YORK CITY, AND ALL FIVE BOROUGHS. DAMAGES FOR THE LOSS OF WAGES FOR BEING FIRED AFTER GETTING ARRESTED AND LOSING AT LEAST $2,400 DOLLARS PER MONTH SINCE AUGUST 25, 2010. AND DAMAGES IN THE AMOUNT OF ONE (1) MILLION**
                                        **(CONT. ON ATTACHMENT #2 AT END OF CLAIM).**

**VI.     Previous lawsuits:**

| On these claims |
|---|

A.     Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____   No **XX**

B.  If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.  Parties to the previous lawsuit:

Plaintiff _____ **NOT APPLICABLE** _____

Defendants _____

2.  Court (if federal court, name the district; if state court, name the county) _____
_____ **NOT APPLICABLE** _____

3.  Docket or Index number _____

4.  Name of Judge assigned to your case _____

5.  Approximate date of filing lawsuit _____

6.  Is the case still pending?  Yes _____  No _____
If NO, give the approximate date of disposition _____

7.  What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?)  _____
_____
_____

| On other claims |
| --- |

C.  Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?
Yes _____  No _____

D.  If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.  Parties to the previous lawsuit:

Plaintiff _____ **NOT APPLICABLE** _____

Defendants _____

2.  Court (if federal court, name the district; if state court, name the county) _____
_____

3.  Docket or Index number _____

4.  Name of Judge assigned to your case _____

5.  Approximate date of filing lawsuit _____

6.  Is the case still pending?  Yes _____  No _____
If NO, give the approximate date of disposition _____

7.  What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____ **NOT APPLICABLE** _____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this **29** day of **AUGUST** , 20**13**

| | |
|---|---|
| Signature of Plaintiff | _Milo Dyla_ |
| Inmate Number | **825-13-00262** |
| Institution Address | **18-18 Hazen Street** |
| | **East Elmhurst, N.Y. 11370** |
| | **Anna M. Kross Center** |

**Note:**  All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this **29** day of **AUGUST** , 20**13** I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _Milo Dyla_

MOVE". I WAS THEN ILLEGALLY DETAINED AND SUBSEQUENTLY ARRESTED. BECAUSE
OF THIS ARREST I WAS LATER STRIPPED AND SEARCHED AT THE STATION HOUSE
AND THE POLICE RECOVERED MARIJUANA FROM MY UNDERWEAR AND ADDITIONAL
DRUGS FROM A CUT IN MY JEANS AS WELL AS $339 IN CURRENCY. OFFICER RAO
LIED AND STATED THAT I, MILO TYLER, MADE A STATEMENT ABOUT DRUGS BEING
IN MY UNDERWEAR, HOWEVER, EVEN IF I DID, OFFICER RAO NEVER READ ME MY
MIRANDA RIGHTS FOR HIM TO EVEN ASK ME ANY INCRIMINATING QUESTIONS. OFFICER
RAO AND OTHERS INVOLVED IN THE ARREST FALSELY ARRESTED ME, AS WELL AS
SUBJECTED ME TO INCREASED PERIODS OF UNLAWFUL IMPRISONMENT. WHEREFORE,
UPON MY ARRAIGNMENT I WAS SCHEDULED FOR A GRAND JURY APPEARANCE, WHICH
EVENTUALLY LED TO MALICIOUS PROSECUTION BY THE ASSISTANT DISTRICT A
ATTORNEY OPERATING UNDER THE NEW YORK COUNTY DISTRICT ATTORNEY MR. CYRUS
R. VANCE, Jr. IN NEW YORK SUPREME COURT, IN WHICH SIX(6) MONTHS LATER
THE CASE WAS DISMISSED BY HON. JUSTICE LAWRENCE K. MARKS. OFFICERS BRIAN
RAO, AND ALL OTHER OFFICERS INVOLVED IN THE ARREST, VIOLATED MY 4TH
AMENDMENT OF THE UNITED STATES CONSTITUTION OF RIGHT AGAINST ILLEGAL
SEARCH AND SEIZURES, AS WELL AS MY 8TH AND 14th AMENDMENTS OF UNLAWFUL
IMPRISONMENT AND DUE PROCESS SUBJECTING ME AND MY LOVED ONES TO CRUEL
AND UNUSUAL PUNISHMENT WITHOUT COMPASSION AND REGARD FOR HUMAN LIFE.
FOR SIX (6) LONG MONTHS MY LIFE WAS PLACED IN DANGER BY THE ASSISTANT
DISTRICT ATTORNEY WHO CONTINUED TO MALICIOUSLY PROSECUTE A CASE KNOWING
THE POLICE DID NOT HAVE THE PROBABLE CAUSE TO FALSELY ARREST ME.

FULL DETAILS OF INCIDENT WILL BE ENCLOSED AND MARKED AS EXHIBITS
A, B, C, & D.

while i do not know any OF THE LAWS OR GUIDELINES THAT GOVERN
PROSECUTORIAL IMMUNITY, AS I AM A LAYPERSON IN MATTERS OF THE LAW, I
REQUEST THAT IN THE EVENT THAT MY CLAIM DOESN'T REACH BEYOND THE REALMS
OF PROSECUTORIAL IMMUNITY, MY CLAIM BE REVIEWED AND PROSECUTED AGAINST
ANY AND ALL PARTIES, INCLUDED AS WELL AS NOT INCLUDED IN THIS COMPLAINT,
IN WHICH THE COMPLAINT APPLIES TO. WHOMSOEVER, I SHOULD SUE FOR MALICIOUS
PROSECUTION I ASK TO BE ADDED BY THE PROFESSIONAL PARTIES REVIEWING
THIS COMPLAINT. WHETHER IT BE NEW YORK CITY, NEW YORK STATE, THE JUDICIAL
SYSTEM OF NYC, WHOMSOEVER SUPERVISES OR HAS JURISDICTION OVER PROSECUTORS
OR WHOMSOEVER IT APPLIES TO.

THE PROSECUTORS DUTIES ARE TO UPHOLD THE LAW WHETHER IT IS AGAINST
A DEFENDANT OR IN A DEFENDANTS FAVOR. IF A PROSECUTOR FULLY INVESTIGATES
A DEFENDANTS ARREST AND FINDS THAT A DEFENDANT WAS IN TURN ARRESTED
WITHOUT PROBABLE CAUSE A PROSECUTOR MUST REQUEST FOR A%

DISMISSAL OF THE CASE INSTEAD OF MALICIOUSLY PROSECUTING A DEFENDANT.
THE PROSECUTOR IS JUST AS LIABLE FOR THE FAILURE TO FULLY INVESTIGATE
THE MATTERS AND PARTICULARS OF A DEFENDANTS CASE.

THE DISTRICT ATTORNEY CY VANCE IS LIABLE FOR HIM ALLOWING HIS
SUBORDINATE ASSISTANT DISTRICT ATTORNEY'S TO CONTINUE TO PROSECUTE CASES
ABSENT A SHOWING OF PROBABLE CAUSE FOR THE DEFENDANTS ARREST. DISTRICT
ATTORNEY CY VANCE SUPPORTS AND CO-SIGNS EVERY INDICTMENT WHETHER HE
READS THEM OR JUST ALLOWS TRUST IN HIS UNDERLINGS TO PERFORM THEIR JOBS
WITHIN THE SCOPE AND LEGAL CONSTRAINTS OF THEIR DUTIES. THE ASSISTANT
DISTRICT ATTORNEY, WHOM HANDLED MY CASE, WHOM IS SUPERVISED BY DISTRICT
ATTORNEY CY VANCE, ACTED WITH DELIBERATE INDIFFERENCE WHEN HE/SHE
PURPOSELY AND MALICIOUSLY PROSECUTED ME KNOWING THAT THE POLICE DID NOT
HAVE PROBABLE CAUSE TO ARREST ME FOR THE CONDUCT IN QUESTION, AND THE
RESULTS OF THAT CASE PROVED I WAS PROSECUTED MALICIOUSLY BY THE HONORABLE
JUSTICE LAWRENCE K. MARKS WHEN SAID CASE WAS DISMISSED AND RESULTED IN
MY FAVOR. THE PLAINTIFF HAS A SHOWING OF MALICIOUS PROSECUTION WHEN
HE/SHE MAKES A CLAIM THAT THEY WERE PROSECUTED WITHOUT PROBABLE CAUSE
FOR THEIR ARREST AND SAID CASE ENDS IN THEIR FAVOR. IF THE A.D.A. HAD
TAKEN ACCOUNT OF ALL THE INFORMATION HE/SHE WAS PROVIDED WITH AND
KNOWINGLY, WILLINGLY, AND PURPOSELY STILL DECIDED TO MALICIOUSLY PROSECUTE
ME AND SAID PROSECUTION WAS CONDUCTED WITHOUT PROBABLE CAUSE FOR MY
ARREST, THEN THE A.D.A., AS WELL AS HIS/HER SUPERIOR, IS LIABLE FOR THE
DAMAGES INCURRED AS A RESULT OF SAID MALICIOUS PROSECUTION UPON A SHOWING
THAT THE CASE ENDED IN PLAINTIFFS FAVOR. I DO NOT REMEMBER WHO THE A.D.A.
WAS, HOWEVER, I WOULD LIKE TO HAVE HIM/HER ADDED TO THIS AMENDED COMPLAINT.
HIS/HER NAME CAN BE FOUND IN ANY AND ALL COURT DOCUMENTS RELATING TO MY
PROSECUTION FOR THE 2010 CASE.

IN REGARDS TO COMMISSIONER RAYMOND KELLY, HIS DIRECT PARTICIPATION
IS HIS FAILURE TO REMEDY A KNOWN WRONG OF THE ILLEGAL AND UNCONSTITUTIONAL
STOP & FRISK POLICY, AND HIS CO-SIGNING AND SUPPORT OF THE PRACTICE
WHICH HONORABLE JUSTICE SCHIRA SCHEINDLIN RECENTLY RULED WAS EXTREMELY
UNCONSTITUTIONAL. HE DELIBERATELY ACTED INDIFFERENT BY NOT TAKING INTO
ACCOUNT THE UNCONSTITUTIONALITY AND ILLEGALITY OF THE PRACTICE AND NOT
REVISING SUCH AN UNCONSTITUTIONAL POLICY OF POLICING IN NEW YORK CITY.

WITHOUT WARNING I WAS ACCOSTED, CUFFED, AND UNLAWFULLY

DETAINED AND SUBSEQUENTLY ARRESTED AND TAKEN TO THE 6TH PRECINCT WHERE I
WAS UNLAWFULLY DETAINED FOR THE NEXT 8 TO 10 HOURS WITHOUT FOOD OR
DRINK. I WAS KEPT IN THAT RAUNCHY CELL WITH OTHER CRIMINALS IN A
MALICIOUS AND SADISTIC MANNER BY ALL THE POLICE OFFICERS NAMED IN
COMPLAINT.

   THERE WAS NO PROBABLE CAUSE TO ARREST ME IN VIOLATION OF MY
4TH AMENDMENT: I WAS ILLEGALLY SEIZED AND SEARCHED IN VIOLATION OF MY
4TH AMENDMENT: UNLAWFULLY IMPRISONED AND SUBJECTED TO CRUEL AND UNUSUAL
PUNISHMENT BY UNLAWFULLY DETAINING ME IN A CELL WITH SQUALID LIVING
CONDITIONS AND NO MEANS OF SUSTENANCE IN VIOLATION OF MY 8TH AMENDMENT
WHICH ALSO VIOLATES MINIMUM STANDARDS OF NYPD AND BOARD OF CORRECTIONS
IN HAVING ALL DETAINEES IN THEIR CARE, CUSTODY, AND CONTROL. REASONABLE
ASSURANCE OF CARE THAT DOES NOT RISE TO THE LEVEL OF TORTURE AND
IMPLICATE NEGATIVE VALUES OF HUMAN RIGHTS AND CAUSE TO DISCRIMINATE
AGAINST ME BECAUSE OF THE COLOR OF MY SKIN WHICH WAS THE SOLE PURPOSE
OF MY ARREST.

   COMMISSIONER RAYMOND KELLY IS RESPONSIBLE BECAUSE HE OVERSEE'S,
SUPERVISES, AND INSTRUCTS THE OFFICERS, WHOM ARE HIS SUBORDINATES, TO
ACT WITH EXTREME DELIBERATE INDIFFERENCE AND RACIAL PROFILING IN
CONDUCTING ILLEGAL AND UNCONSTITUTIONAL STOPS, FRISKS, SEIZURES, AND
ARRESTS. KELLY CONTINUED TO SUPPORT AND CO-SIGN THE UNCONSTITUTIONAL
PRACTICE OF THE STOP AND FRISK POLICY THAT ALLOWS THE POLICE TO ACT
WITH RACIAL AND DELIBERATE INDIFFERENCE IN VIOLATING OUR STATE AND FEDERAL
CONSTITUTION, ARTICLE 1 § 12 AND UNITED STATES CONSTITUTION 4TH AMENDMENT.
SAID STOP & FRISK BILL GIVES THE POLICE THE AUTHORITY TO BELIEVE THAT
THEY CAN CONTINUOUSLY ACCOST PEOPLE ON THE STREET AND INFRINGE UPON A
PERSONS LIBERTY AND RIGHTS BY UNCONSTITUTIONALLY STOPPING, FRISKING,
SEIZING, AND ARRESTING THEM AND INVADING THEIR RIGHTS TO BE LET ALONE
AND SECURE IN THEIR PERSONS. JUDGE SCHIRA SCHEINDLIN HAS AVERRED THAT
THE STOPPING, SEARCHING, SEIZING, AND ARRESTING OF INNOCENT MINORITIES
ABSENT A SHOWING OF PROBABLE CAUSE TO BELIEVE THAT PERSON WAS COMMITTING,
WAS ABOUT TO COMMIT, OR HAS COMMITTED A CRIME IS HIGHLY INTRUSIVE AND
EXTREMELY UNCONSTITUTIONAL AND THE VICTIMS OF SUCH DELIBERATE
INDIFFERENCE SHOULD BE ENTITLED TO COMPENSATION FOR ALL DAMAGES INCURRED
AS A RESULT OF SAID BIASED, PREJUDICIAL, AND UNCONSTITUTIONAL BEHAVIORS
BY THE POLICE AS WELL AS THEIR SUPERVISORS WHOM SUPPORTED AND CO-SIGNED
THE ADMITTANCE/ADMISSIBILITY OF SUCH CONDUCT. ALL SUPERVISORS FROM THE

CAPTAINS ALL THE WAY UP THE CHAIN OF COMMAND LINE TO THE COMMISSIONER. THE COMMISSIONER RAYMOND KELLY HAS THE AUTHORITY AND POWER TO REVISE SUCH PREJUDICIAL AND UNCONSTITUTIONAL BEHAVIORS AND ACTIONS BY THE NYPD, HOWEVER, HE INTEAD TENDS TO SUPPORT THEIR UNCONSTITUTIONAL BEHAVIORS AND ACTIONS AND SHOULD BE HELD LIABLE AND ACCOUNTABLE FOR THE ACTIONS OF ALL THE SUBORDINATES WHOM ARE UNDER HIS DIRECT SUPERVISION AND AUTHORITY. THE NYPD IS A 'DO AS YOUR TOLD' DEPARTMENT AND THE OFFICERS WERE TOLD BY COMMISSIONER KELLY THAT IT IS OKAY TO CONTINUE WITH THE PRACTICE OF INFRINGING UPON A PERSONS LIBERTY TO BE LET ALONE IN HIS/HER PERSON BY HIM SUPPORTING AND SIGNING THE BILL TO CONTINUE THE STOP, FRISK, SEARCH, SEIZE, ACCOST, AND ARREST POLICY.

RAYMOND KELLY IS ALSO LIABLE IN JUST BEING RESPONSIBLE FOR THE ACTIONS OF HIS SUBORDINATES BY FAILING TO TEACH AND/OR TRAIN THE POLICE OFFICERS NAMED IN COMPLAINT TO GATHER EVIDENCE AND MAKE ARRESTS THAT IN FACT ARE OUTSIDE THE SCOPE OF THE CONSTITUTION THAT GIVES RISE TO A CITIZENS LIBERTY INTEREST WITH THE HIGHEST STANDARDS OF INTEGRITY.

REGARDING NEW YORK CITIES LIABILITY, WHOM I WISH TO ADD TO THIS AMENDED COMPLAINT, THE CITY IS DIRECTLY LIABLE FOR IT'S EMPLOYEES ACTIONS DUE TO JUDGE SCHIRA SCHEINDLINS DECISION ON THE STOP & FRISK POLICY/ PRACTICE. IF AN EMPLOYEE WHOM WORKS FOR A COMPANY MESSES UP AND HIS DIRECT SCREW UP DAMAGES ANY PART OF A PERSONS LIFE, LIBERTY, MENTAL STATE, OR PHYSICAL BEING, ETC..., THEN THAT COMPANY IS LIABLE FOR THE DAMAGES INCURRED BY THE INJURRED PLAINTIFF UPON A SHOWING THAT SAID EMPLOYEE INJURRED THE PLAINTIFF. E.G. A PERSON WORKS FOR A CONSTRUCTION COMPANY AND DROPS A 2 BY 4 ON AN INNOCENT PERSONS HEAD WHO IS WALKING DOWN THE STREET, THE COMPANY IS LIABLE FOR THAT EMPLOYEE'S ACTIONS. I WAS ILLEGALLY AND UNCONSTITUTIONALLY STOPPED, DETAINED, FRISKED, SEARCHED, SEIZED, AND ARRESTED.

RESPECTFULLY SUBMITTED

_Milo Dylu_

## ATTACHMENT # 2:

<u>CONT</u>.

DOLLARS FOR THE LOSS OF HOUSING AS WELL AS THE HARDSHIP OF REINTERGRATION
BACK INTO SOCIETY AND HARDSHIPS I HAD TO ENDURE TO GET BACK INTO MY
REGULAR LIFESTYLE.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## MR. MILO TYLER

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

-against-

## OFFICER BRIAN RAO
## POLICE COMMISSIONER RAYMOND KELLY
## ~~DISTRICT ATTORNEY CYRUS VANCE JR.~~
## OFFICER GREGORY ABBOTT   ET AL

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

7:13  Civ. 03519 KMK ( )

**REQUEST TO PROCEED**
*IN FORMA PAUPERIS*

*Court Previously granted IFP on 8/01/2013*

I, __MR. MILO TYLER__ , *(print or type your name)* am the plaintiff/petitioner in the
above entitled case and I hereby request to proceed *in forma pauperis* and without being required to prepay
fees or costs or give security. I state that because of my poverty I am unable to pay the costs of said
proceeding or to give security therefor, and that I believe I am entitled to redress.

1. If you are presently employed:
   a) give the name and address of your employer
   b) state the amount of your earnings per month

   __NOT APPLICABLE__

   _____

2. If you are NOT PRESENTLY EMPLOYED:
   a) state the date of start and termination of your last employment
   b) state your earnings per month
   **YOU MUST ANSWER THIS QUESTION EVEN IF YOU ARE INCARCERATED.**

   __AUGUST 25, 2010__

3. Have you received, within the past twelve months, any money from any source? If so, name the
   source and the amount of money you received.

   __no__

   a) Are you receiving any public benefits?       ☒ No.       ☐ Yes, $_____ .

   b) Do you receive any income from any other source?   ☒ No.       ☐ Yes, $_____ .

*Rev. 05/2010*                    *1*

4.   Do you have any money, including any money in a checking or savings account? If so, how much?

X No.        ☐ Yes, $_____ .

5.   Do you own any apartment, house, or building, stock, bonds, notes, automobiles or other property?
     If the answer is yes, describe the property and state its approximate value.

X No.        ☐ Yes, $_____

6.   Do you pay for rent or for a mortgage? If so, how much each month?

X No.        ☐ Yes, _____ .

7.   List the person(s) that you pay money to support and the amount you pay each month.

     NOT APPLICABLE

     _____

8.   State any special financial circumstances which the Court should consider.

     I AM INCARCERATED, UNEMPLOYED, INDIGENT, AND I DO

     NOT HAVE ANY MONEY OR ASSETS, STOCKS OR BONDS SAVED

     _____

I understand that the Court shall dismiss this case if I give a false answer to any questions in this declaration.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this __29__ day of __AUGUST__ , __201 3__
      *date*            *month*       *year*

_____
                 *Signature*

*Rev. 05/2010*                              2



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# PRISONER AUTHORIZATION

Case Name: <u>Mr. MILO TYLER</u>        v. <u>KOPYSTIANSKYJ, CY VANCE, GREGORY ABBOTT, BRIAN RAO, RAYMOND KELLY, ET AL</u>
*(Enter the full name of the plaintiff(s))*        *(Enter the full name of the defendant(s))*

Docket No:   No. <u>7:13</u> Civ. <u>05319</u> (KMK)
*(Enter the docket number, if available; if filing this with your complaint, you will not have a docket number.)*

The Prison Litigation Reform Act ("PLRA" or "Act") amended the *in forma pauperis* statute (28 U.S.C. § 1915) and applies to your case. Under the PLRA, you are required to pay the full filing fee when bringing a civil action if you are currently incarcerated or detained at any facility. If you do not have sufficient funds in your prison account at the time your action is filed, the Court must assess and collect payments until the entire filing fee of $350.00 has been paid, no matter what the outcome of the action.

**SIGN AND DATE THE FOLLOWING AUTHORIZATION:**

I, <u>Mr. MILO TYLER</u> *(print or type your name)*, request and authorize the agency holding me in custody to send to the Clerk of the United States District Court for the Southern District of New York, or, if this matter is transferred to another district court, to the Clerk of the transferee court, a certified copy of my prison account statement for the past six months. I further request and authorize the agency holding me in custody to calculate the amounts specified in 28 U.S.C. § 1915(b), to deduct those amounts from my prison trust fund account (or institutional equivalent), and to disburse those amounts to the United States District Court for the Southern District of New York. This authorization shall apply to any agency into whose custody I may be transferred, and to any other district court to which my case may be transferred and by which my poor person application may be decided.

I UNDERSTAND THAT BY SIGNING AND RETURNING THIS NOTICE TO THE COURT, THE ENTIRE COURT FILING FEE OF $350.00 WILL BE PAID IN INSTALLMENTS BY AUTOMATIC DEDUCTIONS FROM MY PRISON TRUST FUND ACCOUNT **EVEN IF MY CASE IS DISMISSED OR EVEN IF I VOLUNTARILY WITHDRAW THE CASE.**

<u>AUGUST 29</u>, 20<u>13</u>        <u>Milo Tyler</u>
*Date signed*        *Signature of Plaintiff*
        <u>825-13-00262</u>
        *Prisoner I.D. Number*

        <u>Anna M. Kross Correctional Facility</u>
        *Name of current facility*

*rev. 01/11*

EXHIBIT A

---

The People of the State of New York, Plaintiff, against Milo Tyler, Defendant.
SUPREME COURT OF NEW YORK, NEW YORK COUNTY
30 Misc. 3d 1218A; 924 N.Y.S.2d 311; 2011 N.Y. Misc. LEXIS 184; 2011 NY Slip Op 50122U
4270/10
February 3, 2011, Decided

---

Notice:

THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL
REPORTS.PUBLISHED IN TABLE FORMAT IN THE NEW YORK SUPPLEMENT.

Headnotes

{924 N.Y.S.2d 311} Crimes--Arrest--Probable Cause--Touching Hands with Drug Dealer Insufficient to Support
Probable Cause.

Judges: Lawrence K. Marks, J.

Opinion

Opinion by:     Lawrence K. Marks

Opinion

Lawrence K. Marks, J.

This case addresses the level of intrusion to which the police may subject an individual when they see
that individual briefly touch hands with a drug dealer moments after the dealer sold drugs to an
unrelated individual.

The defendant, Milo Tyler, has been indicted for criminal possession of a controlled substance in the
third degree and related crimes. He moves to suppress contraband and currency recovered from him,
as well as statements he made to the police, all in connection with his arrest on August 25, 2010. At a
combined Mapp/Dunaway/Huntley hearing, the People presented the testimony of Police Officer Brian
Rao and Sergeant Gregory Abbott. Based on that testimony, which on critical issues was lacking in
consistency and clarity, the court makes the following findings of fact.

I.

On the night of August 25, 2010, Officer Brian Rao, an experienced narcotics officer, was one of the
"apprehending officers" in a Street Narcotics Enforcement Unit deployed in the vicinity of Sheridan
Square in Manhattan, a drug-prone area in which Officer Rao had previously made numerous drug

EXHIBIT B

corner of Christopher and Bleecker Streets and stopped him by walking up to him and saying, "Hey, man, can I talk to you for a second." Abbott remembers Rao arriving at the scene few seconds after he did and has no recollection of Rao ordering defendant to stop. Although the court credits Rao's recollection more than Abbott's, it appears they both have been involved in so many drug arrests that there is a basic inability to remember critical details of this arrest. Both officers agree, however, that when they converged on defendant, he dropped an umbrella he was carrying and calmly placed his hands against a nearby wall. Rao also believes that Abbott may have spread defendant's legs apart as he was against the wall to prevent him from fleeing the scene. A third officer then joined them on the scene within thirty seconds.

While defendant was against the wall surrounded by the three officers, Rao told defendant he had just observed him "do something back there," and said, "I'll make you a deal. If you give me what I think you just bought, I'll try to get you a desk appearance ticket tonight. If I search and find it, you know, I have to send you to Central Booking." Rao testified that he would often provide this option before searching a suspect because searching individuals carried the risk of being pricked by a needle, knife or other sharp object. Defendant replied that he had marijuana in his underwear. Rao initially testified that defendant was under arrest and in handcuffs when he made the statement, but later said he did not recall whether defendant was in handcuffs at the time of the statement. He made it plain, however, that, at that time of the "questioning" defendant was in custody and not free to leave. Although Sergeant Abbott agreed that defendant was not free to leave at any point during the encounter, he testified that defendant was not handcuffed until after he admitted having marijuana in his underwear. None of the officers searched defendant at the scene, electing instead to transport him to the station house.

At the station house, the police searched defendant and recovered marijuana from his underwear and additional drugs from a cut-out in his jeans, including "twists" of cocaine, crack cocaine and ecstasy pills, as well as $339 in currency.

II.

In the seminal case of *People v. DeBour*, 40 N.Y.2d 210, 352 N.E.2d 562, 386 N.Y.S.2d 375 (1976), the Court of Appeals established a four-part analysis for evaluating the propriety of police conduct in street encounters with citizens. Each progressive level in the analysis permits a greater level of police intrusion upon the citizen's liberty. The initial level, which involves only the minimal intrusion necessary for the police to request information, must be based on an "objective credible reason" for approaching the person, but the reason need not be suggestive of any criminality on the part of the citizen. The next higher level allows a police officer "to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure." This level of intrusion, often called the common-law right of inquiry, requires that the police have a "founded suspicion that criminal activity is afoot." It permits the police to ask questions that would lead the person to believe that he or she is suspected of committing a criminal act. *See People v. Hollman*, 79 N.Y.2d 181, 185, 590 N.E.2d 204, 581 N.Y.S.2d 619 (1992). Next, where the police have a "reasonable suspicion" that the person has committed, is committing or is about to commit a crime, they may forcibly stop and detain a suspect to gain explanatory information. Under section 140.50(1) of the Criminal Procedure Law, the police are permitted to demand of the person "his name, address and an explanation of his conduct." *See DeBour*, 40 N.Y.2d at 223. In connection with the forcible detention, the police may also pat-down the suspect for weapons if they reasonably suspect they are in danger of physical injury. *DeBour*, 40 N.Y.2d at 223 (citing CPL 140.50(3)). Finally, the police may arrest a defendant and take him or her into custody when they have probable cause that the defendant is committing, has committed or is about

EXHIBIT C

Court held that a combination of factors supported the inference that the officer had just witnessed a drug sale, and thus provided him with probable cause to arrest.

Here, Officer Rao did not see any exchange between defendant and Rondan, and the totality of the circumstances surrounding Rao's brief observation did not support probable cause to believe that an exchange took place. At most, Rao observed defendant briefly touch hands with Christian Rondan on a busy street in Greenwich Village. Rao saw no exchange of items, furtive behavior or any other indicia of a drug transaction. He saw no currency pass between the two, and he articulated no basis for believing that there was even an opportunity for a bilateral exchange. Cf. People v. Tinnin, 36 AD3d 457, 828 N.Y.S.2d 27 (1st Dep't 2007); People v. Rios, 34 AD3d 375, 825 N.Y.S.2d 451 (1st Dep't 2006); People v. Sylvain, 33 AD3d 330, 821 N.Y.S.2d 588 (1st Dep't 2006); People v. Schlaich, 218 A.D.2d 398, 640 N.Y.S.2d 885 (1st Dep't 1996). Moreover, the full interaction lasted only a moment and was entirely consistent with a completely innocent encounter of two people who know each other exchanging a brief greeting as they passed on the street. Although Rao testified that he thought an exchange took place based on his experience as a narcotics officer, it is clear that the only reason he called for his team to stop defendant was because he knew that Rondan had engaged in a drug transaction with an unrelated individual a few minutes earlier, and that Rondan had drugs in one of his hands when arrested. He failed to articulate any basis - either from his experience as a narcotics officer or otherwise - to support his belief that the brief touching constituted an exchange of drugs or money. Significantly, Rao's choice of language at the hearing is telling. He said that he was suspicious of defendant because his contact with Rondan "just looked odd" knowing that Rondan had just sold drugs to someone else. It is well settled, however, that the mere presence of an individual at a scene of criminal activity, without more, does not establish probable cause to arrest. See, e.g., People v. Mothersell, 14 NY3d 358, 926 N.E.2d 1219, 900 N.Y.S.2d 715 (2010); People v. Leveridge, 204 A.D.2d 246, 612 N.Y.S.2d 568 (1st Dep't 1994); People v. Terrell, 185 A.D.2d 906, 587 N.Y.S.2d 8 (2nd Dep't 1992); People v. Trapier, 47 A.D.2d 481, 367 N.Y.S.2d 276 (1st Dep't 1975); see also Ybarra v. Illinois, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). Moreover, "the notion that behavior which is susceptible to innocent as well as culpable interpretation, will constitute probable cause" has long been rejected by the Court of Appeals. DeBour, 40 N.Y.2d, at 216.

This does not mean that Rao was without authority to investigate his suspicion that defendant was somehow involved in narcotics activity with Rondan. Although he saw no exchange, and may well have not even witnessed an opportunity for an exchange, he was aware that Rondan had just sold drugs to another individual. He also seized drugs from Rondan immediately after defendant had come into contact with him. Indeed, the People alternatively argue that Rao had "reasonable suspicion that defendant was committing a crime or, at the least, a "founded suspicion" that he was involved in criminality. Thus, they argue, the police could have forcibly stopped, or at the least, temporarily detained, defendant to seek further information from him, including asking questions accusatory in nature such as whether he possessed any contraband. See People v. Hollman, supra.

It is clear, however, that the police in this case never sought to exercise whatever right they may have had to acquire explanatory information from defendant. Even if the police had "reasonable suspicion" so that they could forcibly stop and detain defendant, or even if they had a founded suspicion that he was involved in criminality, they never tried to obtain from him an explanation of his conduct. Although it may be a close question whether defendant was seized at the moment Rao initially confronted him and said, "Police. Don't move," see, e.g., People v. Bora, 83 N.Y.2d 531, 535, 634 N.E.2d 168, 611 N.Y.S.2d 796 (1994); People v. Townes, 41 N.Y.2d 97, 359 N.E.2d 402, 390 N.Y.S.2d 893 (1976), defendant clearly had been seized and arrested by the time he admitted to Rao that he was in possession of marijuana. By then, he was surrounded by Rao and two other officers, had his hands against the wall and had his feet apart in a spread position. Moreover, while defendant was being

EXHIBIT D

For all of the above reasons, defendant's motion to suppress the statement he made to police as well as the contraband and currency recovered from him is granted.

This opinion shall constitute the decision and order of the court.

Dated: February 3, 2011

EXHIBIT D

EXHIBIT D

EXHIBIT D

EXHIBIT D